STATE OF OKLAHOMA *ex rel.* CORLEY v. PITCHFORD, District Judge.

No. 4930. Opinion Filed April 15, 1913.

Original Action for Writ of Mandamus. Writ Denied.

*M. S. Rutherford, W. L. Curtis, W. P. Harris,* and *Scothorn, Caldwell & McRill,* for relator.

*W. W. Hastings* and *P. Helton,* for respondent.

PER CURIAM. This case is an original action in this court, brought by the state of Oklahoma on the relation of W. A. Corley against John H. Pitchford. The relator is the county judge of Adair county, and the respondent is the judge of the district court of the judicial district within which such county is located. The petition for the writ avers the election, qualification, and entrance upon the duties of his office of the relator, and avers that on the 18th day of March, 1913, the grand jury for that term of court presented an accusation against him, charging him with certain misconduct in office, during a term which ended January 6, 1913; that on the presentation of the said accusation, the said respondent, as judge of the said district court, received it and ordered it filed, and set a hearing thereon for March 27, 1913; that on the 20th day of March, 1913, the relator filed with the clerk of the district court an application for a change of judge on the ground of bias and prejudice; that, notwithstanding the said bias and prejudice, the said respondent refused, and still refuses to certify to his disqualification, and prayed that a writ of mandamus issue demanding him to so certify. On April 1, 1913, the said respondent filed his answer to the alternative writ issued in accordance with the prayer of the petition, on which day, in open court, a hearing was had upon the issues of fact presented. No oral testimony

was taken, but by agreement a large number of affidavits by both parties have been filed. The facts relied upon by the relator to establish the bias and prejudice of the respondent appear to be in the main substantially as follows:

That in December, 1912, he granted a mandamus compelling relator to disqualify in a certain case then pending before him as judge of the county court of the said county; that the respondent as such judge at that time and at all times since then has always consulted with W. W. Hastings whose name has been entered of record as one of the prosecutors in this case; that the said W. W. Hastings is an avowed enemy of affiant; that respondent knew he had been before the grand jury which presented the accusation above referred to; that in a hearing upon an original accusation presented against affiant by the board of county commissioners of the said county, respondent granted several prayers requested by the said W. W. Hastings and his associates, none of whom were officials of the said county; that he suspended relator from his office and enjoined him from qualifying as county judge elect for his term beginning January 6, 1913; that on the organization of the grand jury which presented the accusation, he set aside the regularly qualified county attorney and appointed R. Y. Nance to serve as special prosecutor; that Nance was a witness against relator, and with whom was associated the names of W. W. Hastings and C. F. Bliss as special prosecutors, all of whom have remarked in public that it was relator they were after. That on the return of the said accusation, respondent, without notice to relator or his attorneys, entered an order suspending him from office pending final hearing of the said accusation, denying himself or his attorneys two hours time to consider the accusation. That respondent had stated in a certain barber shop, in substance, to wit: "Woe unto the minor officers, we have got them where we want them"; or, "Don't sigh, little officers, don't sigh, you'll get what's coming to you, bye and bye," in which he had

reference to this relator. And on another occasion he remarked, "I can't go back on W. W. Hastings and the Wylies, for they have put me where I am." That in December, 1912, during that term of the district court, respondent appointed three jury commissioners, two of whom were disqualified to act because of cases pending, and the third was an enemy of relator's, and hence was disqualified to act as such commissioner. That he is now, and has been for sometime, after the office occupied by relator, and that all of these said matters were known to said respondent at the time he appointed the commissioners. There are some further averments concerning the enmity of all of the parties above named and some others, and allegations of social friendship between the said respondent and the said attorneys, which we do not deem necessary to set out at length, as the foregoing sets forth substantially the material facts upon which the relator relies to establish the bias and prejudice of the respondent.

In his answer, after admitting the formal averments, respondent denies that he has any bias or prejudice, or any personal ill feeling of any kind or character against W. A. Corley, or against the attorneys representing him, or that he has made any statements of any kind or character indicating that he had any such bias or prejudice, and denies that he cannot preside in the said case and give him a fair and impartial trial. That he granted a writ of mandamus in December, 1912, compelling relator to disqualify in a certain case then pending before him, but denies that the said writ was granted because of the alleged bias and prejudice of the said relator, but that the said relator was a stockholder in the Southern Surety Company which was surety upon the bond of the administrator in the said case, and hence was interested in the determination of the proceedings. Respondent denies that he has been in consultation with W. W. Hastings or with any other attorney with reference to rul-

ings or orders made; that the allegation concerning his social and personal relations with attorneys representing said relator to show bias or prejudice is immaterial. Respondent states that he was unaware that R. Y. Nance was a witness against the said W. A. Corley at any time. He admits that a petition was presented to him in chambers at Tahlequah, after notice for the temporary suspension of the said W. A. Corley from the office of county judge and to enjoin him from assuming office upon a new · term for which he had been elected, on January 4, 1913, and that he issued an order temporarily suspending him; that said order was granted upon the petition of the duly elected, qualified and acting members of the board of county commissioners, which petition was filed as directed by a resolution of said board; that said resolution directed the county attorney to associate with him the firm of Arnold & Chase and Pete Helton to represent · them in said proceedings, and that the county attorney refused to obey the instructions, and declined to prosecute the charges preferred in said proceedings. Respondent admits that he appointed R. Y. Nance as special attorney to wait upon the said grand jury at the opening of the March, 1913, term of court in and for Adair county, and states that the conditions existing made it imperative to call a grand jury; that complaint was general throughout the county that the full-blood heirs of deceased allottees were not being protected, and respondent was aware that the out-going county attorney, W. A. Scofield, had declined to obey the instructions of the board of county commissioners in the matter of presenting the charges above set out; that the present county attorney, W. A. Woodruff had also declined to act in the matter; that the said Woodruff had attempted to appoint W. A. Scofield as his assistant, which said recommendation was not confirmed but rejected by the board of county commissioners; that he was informed that the said W. A. Woodruff and the said W. A. Scofield would perhaps be investigated by said

grand jury, and in order to have an absolutely fair and im-
partial and thorough investigation conducted, respondent ap-
pointed R. Y. Nance as special attorney to wait upon the
said grand jury. Respondent further states that no ob-
jection was raised to the appointment of R. Y. Nance by
either W. A. Woodruff, W. A. Scofield, or the relator W. A.
Corley, on the ground that he was connected with said mat-
ters or would be a material witness; that the grand jury
appeared in open court and asked for special instructions with
reference to the duties of the said R. Y. Nance, stating that
W. A. Woodruff had appeared before the grand jury and pro-
tested against the said Nance acting in the capacity of spe-
cial attorney before said grand jury, whereupon the court
specially instructed the grand jury that the said R. Y. Nance
was to appear before them in all matters and things wherein
the county officials of Adair county and their associates were
to be investigated, and that the said W. A. Woodruff would
appear in all other matters. Respondent states further that
he is informed the said R. Y. Nance conducted said in-
vestigation honestly and without prejudice toward the said
W. A. Corley or anyone else; that after presentment was re-
turned, the said W. A. Woodruff admitted his disqualification
to act in the prosecution of said case, and respondent ap-
pointed R. Y. Nance to act as special attorney to prosecute
said case, at whose request respondent ordered the appearance
of said C. F. Bliss and W. W. Hastings to be entered of
record.

Concerning the alleged remarks in the barber shop, re-
spondent states the facts to be that some parties were in
the barber shop with him discussing newspaper accounts of
the investigations by the state Legislature, and no mention
was made of the said relator or of any local officer or of
the grand jury then in session, when respondent in that con-
nection, and referring only to the investigations by the Legis-
lature, quoted from a western Oklahoma newspaper: "Oh

you little officers, don't you cry, you will be investigated bye and bye." In support of this statement is filed an affidavit of the proprietor of the barber shop. Respondent denies further that he ever stated at any place on any occasion, "I can't go back on W. W. Hastings and the Wylies, for they have put me where I am," and that he has counselled or advised with the said W. W. Hastings or those associated with him in the prosecution of the said relator, and denies that he has ever by word or act indicated in any way, any bias or prejudice against the said relator, or that he had any desire to deny him his constitutional rights.

In reference to the allegation relative to the appointment of the jury commissioners at the December, 1912, term of the district court of Adair county, respondent states that he was not informed that one of the commissioners was an enemy of the said W. A. Corley, and that at the time the said commissioner was sworn and instructed, no protest was entered against the appointment of either of them; that neither of the commissioners had a case pending in the courts of Adair county; that he had no knowledge that Frank Howard, Sr., one of the jury commissioners appointed by respondent, was an applicant for the appointment to the office of county judge in the event said W. A. Corley was removed from office, and respondent denies that said commission was appointed for the purpose of placing names in the jury box who had any bias or prejudice or were unfriendly to said W. A. Corley or any other person; that the men composing the present grand jury are men of highest integrity, and are discharging their duties faithfully, fairly and impartially.

Accompanying as a part of the case of both relator and respondent are their own and a large number of affidavits purporting to corroborate the same. All of the evidence contained in the affidavits for the relator is specifically denied by the affidavit of the respondent and by the affidavits of other parties who, it is asserted, were acquainted with the facts. If we as-

sume that the averments of fact set forth in relator's petition, independent of the conclusions which are drawn therefrom, are, standing alone, sufficient to authorize the issuance of the peremptory writ, still we must hold that on the showing made by relator, upon whom is cast the burden to establish his case by a preponderance of the evidence, he has not discharged this burden. The preponderance of the evidence is against him, and while we entertain no doubt that relator believes and is confident that the court, grand jurors and other officers who are proceeding against him, both civilly and criminally, are prejudiced against him, in view of the evidence offered by Judge Pitchford, we must find that relator has failed to establish his averments of bias and prejudice, and the writ prayed for is denied, the alternative writ quashed, and the proceeding dismissed.